The Chancellor.
The first question is, whether, under the will and so much of the testimony as may be considered in connection with it, any more of the pension than that which accrued from September 4,1840, to the death of the testatrix, on the 18th of February, 1841, belongs to the estate of the testatrix.
The will gives and bequeaths to the complainant “all my property and possession, whether real or personal, including my wearing apparel, and also the amount of my pension which may be due at my death,” and appoints Elias C. Clayton her executor “to take charge of all my property, and to receive all my pension money, and after paying my funeral expenses, to pay the balance to my daughter Catharine Vandcrhoof.”
First, under this clause and the proof in the case, can the $930 received in the spring of 1839, as the pension which had accrued from the period named in the certificate for its commencement, be considered as belonging to her estate, and as passing by the will 1
A receipt signed by Catharine Hartshorne, by her mark, ‘witnessed by Joseph R. Magee, dated March 8, 1839, by which the said Catharine acknowledges to have received from Elias C. Clayton $931 98, in full of her pension up to March 4,1839, obtained by him for her, excepting $430 which she had agreed *196 to give him for his services in obtaining her pension for her and paying her expenses, is exhibited on the part of the defendants.
Magee, the subscribing witness to this receipt, testifies that he was-a clerk in the store of Elias C. Clayton, kept a short distance from John Clayton’s residence. That Elias C. Clayton wrote the receipt at the store, with the name Catharine Hartshorne thereto, and gave it to the witness and told him to take it to Mrs. Hartshorne and get it signed, and to witness the receipt; saying that he had been up to Col. Clayton’s, (the defendant John Clayton’s,) and settled with Mrs. Hartshorne. That he, the witness, took the receipt to Mrs. Hartshorne, and read it to her; that she said it was all right, or she expected it was right, witness do’nt remember which, and signed her mark to it, and he witnessed it. His impression is, that Col. John Clayton was by when he took the receipt to Mrs. Hartshorne.
On cross examination, he says, that when he went to her with the receipt, he did not take any money to her; and that he did not see any money paid to her.
On the 10th February, 1841, nearly two years after this receipt, Catharine Hartshorne made her will, containing the clause above stated. I am of opinion, that the'will confirms this receipt, and excludes the idea that the testatrix, at the making of the will, contemplated that any thing was due to her from any person for pension money accrued due at the date of that receipt. We are not at liberty to suppose that she did not remember the giving of that receipt. She must be supposed to have known, when she signed the receipt, and when she made her will, whether she actually received the money which, from the terms of the receipt, it would appear that she had received. It may be that when she signed the receipt, John Clayton had received from her, or from Elias, the amount named in it except the $430 which she allowed Elias to retain. But if it be so, the fact of her giving the receipt, and of her taking nothing from John Clayton to shew any indebtedness from John Clayton to her, taken in connexion with the terms of the will, made nearly two years after, would be sufficient to show that she had given the balance to John Clayton, or paid it to him. And if she was willing to do so, to requite a benefactor, or make what she *197 thought a proper compensation for her board &c., no just complaint can bo made against it.
1 think those remarks are applicable also to the $480 which she allowed Elias C. Clayton to retain. He paid $125 of this $480 to the attorney he employed to prepare the papers &c. for attaining the pension for her. The testatrix made him executor of her will. I am disposed to think that this fact, and the peculiar language of the will, connected with the fact that she had allowed him, after the pension was received, to retain $480 of it for expenses and Ms services in obtaining it, should he considered equivalent to a gift of it hy the will.
The case does not seem to mo to stand on the question, whether, under the act of Congress, the court would give effect to any agreement or understanding, before the pension was obtained, that the person obtaining it should be allowed a portion of it for his services. She would certainly he at liberty to give Elias, hy will made two years after the pension was received, any portion of the pension money she had received or that was due her; though any agreement before it was obtained to pay Mm a portion. of it when obtained might be void.
John Clayton admits that he received for Catharine Hartshorno the three last semi-annual payments of her pension which became due in her life time, amounting to $465. They became due as follows: September 4, 1889, $155; March 4, 1840, $155 ; September 4, 1840, $155. He alleges, in his answer, that when he drew her pension he offered it to her, and she requested him to keep it, to pay him for her hoard, wMch, he says, he has done.
His saying she requested him to keep it &c. is matter set up in avoidance, and must be proved. The testimony on this part of the case is that of Sarah Ann Mount.
She says that in the fall of 1889, John Clayton drew her pen-«ion; (the semi-annual payment;) that on the next day he offered it to Mrs. Hartshome, and that she said to him, you know I have been a great deal of trouble to you, and if I live, I do not know how much trouble I may be; and that if it had not been for the pension she could not have made Mm any satisfaction j and that he might take it and keep it as long as she lived, *198 and when she was dead and gone, he might do as he pleased with it. The witness said that Mrs. Hartshorne wished him to keep it for the trouble sbe bad been to him and the trouble she would be.
On cross examination the witness said, that when Col. Clayton offered Mrs. Hartshorne the money, she said, in conversation, that he was more capable of taking care of the money than she was, and to keep it.
As to the two other semi-annual instalments of the pension received by John Clayton, there is no evidence either of his offering them to Catharine Hartshorne or of her requesting him to keep them.
On this part of the case, I am of opinion, that John Clayton’s offering her the said instalment received by him in the fall of 1839 is sufficient evidence that he did not then consider her in his debt. How it was that he was willing to offer her this money does not, with certainty, appear ; but I cannot resist the impression made on my mind by the pleadings, proofs and circumstances, that he got the benefit of the $930 first drawn, excepting thereout the money which Catharine Hartshorne allowed Elias C. Clayton to retain. If he had not, it can hardly be imagined, in view of the defence set up in the answer, that he would have offered to pay her this $155. And I do not think that the testimony of Mrs. Mount enables me to say that the answer of Catharine Hartshorne to Col. Clayton amounted to a gift of the $155.
This part of the ease, therefore, turns on the question, whether Catharine Hartshorne’s giving, by her will, to her daughter, the amount of her pension money which might be due at her death, and directing her executor to take charge of all the property and receive all her pension money, and after paying her funeral expenses, to pay the balance to her daughter, amounts to a gift to Col. Clayton of the $465 received by him in the last three instalments before her death. I do not think it should he so considered. It does not appear that she was ever informed that the two last instalments, or either of them, had been drawn by CoL Clayton; and if we ought to presume that a woman of her great age, and in the infirm state in, which she appears to have been at *199 that timo, would he aware that the time for their payment was passed, and could divest ourselves entirely of doubt whether the peculiar language of the will in this respect was really her language ; yet it is easy to perceive that money in Col. Clayton’s hands, received by him as her pension money, might bo considered by her as pension money due her. She had given no receipt for any of it; and as to the last two instalments, it does not appear that either of them had ever been offered to her.
I have found this case, somewhat difficult to decide; hut, on a careful examination of it, I am strongly impressed that John Clayton should be decreed to account for the $465 received by Mm in the three last enstalments of the pension; and that he should be allowed, in that account, reasonable compensation for the maintenance of Catharine Hartshorne from the 8th March, 1839, and to any clothing he may have furnished her after that time.
He cannot be allowed, as against this $465, any sum for maintenance &c. prior to that time. Nearly two and a half years elapsed from the death of the testatrix to the filing of the hill in this case, and John Clayton presented no account against the estate of the testatrix to the executor of her will. If he did not receive the residue of the $931, after the allowance made to Elias out of it, his presenting no account to the executor is, at least, very persuasive to show that he did not consider her estate indebted to him. If he did receive it, the facts show that he considered himself paid. His offering her the next instalment must be taken as proof of one or the other.
As to the account of the executor, for so much of the assets of the estate as has come to Ms hands, he proffers himself, in Ms answer, ready to render such account; and I see m reason why that account should not he settled in this cause.
Order accordingly.